SWEN L. THOMPSON *vs.* ANDREW P. JOHNSON *et al.*

Argued Dec. 5, 1893.   Affirmed Dec. 18, 1893.

No. 8439.

**Findings sustained by the evidence.**

Findings of fact *held* sustained by the evidence.

**Unlawful preference given by an insolvent debtor to his creditor.**

When a creditor of an insolvent debtor secures an unlawful preference by the transfer of property, the transfer will, at the suit of the assignee in insolvency, be wholly void.   It will not be partly valid because the creditor, to secure the preference, paid in money part of the agreed price of the property.

**Others who participate in the preferential transaction.**

And where the preference is given by transferring property to the creditor and others, who pay part of the agreed price in money, the transfer will not be valid as to them, if they knew the purpose was to give a preference to the creditor.

**Such preferential transfer, void ab initio.**

A judgment declaring such a transfer void relates back to its date, so that the transferee may be charged with the value of the use of the property, and for the damages to it while in his possession; and if, when, pursuant to the judgment, the property is delivered to the assignee, it appears to have been damaged, the court may then ascertain the amount thereof, and modify the judgment accordingly.

Appeal by defendants, Andrew P. Johnson, Aaron Abrahamson, James P. Onstad, Andrew Nash, Jonas Olander, and Lewis Lilly, from an order of the District Court of Fillmore County, *John Whytock,* J., made June 7, 1893, denying their motion for a new trial.

Edward A. Hostvet and Carl C. Hourn were partners in business. They had a creamery at Houston, another at Rushford and a cream-ery and feed-mill at Lanesboro.   They also had two ice-houses and a dray business at Rushford.   The creameries, feed-mill and ice-houses stood on leased ground and were personal property.   Hostvet died intestate January 9, 1888.   Hourn continued the business as surviving partner.   The firm was owing considerable and was in fact insolvent, but Hourn believed the partnership property worth

more than the indebtedness.    On December 6, 1889, he sold the dray property to Peder E. Pederson for $500 in payment of the firm debt to him of that amount.    On December 7, 1889, he sold the creamery and feed-mill at Lanesboro to Nelson Bros. for $1,000 in payment of the firm debt to them of that amount.    On the same day he sold the creamery at Houston to the defendants above named for $2,100 in payment of the firm debts to defendants, Andrew P. Johnson, Andrew Nash and Aaron Abrahamson of that amount. Johnson and the other defendants above named formed a partnership to purchase and carry on that business and they each paid to Johnson, Nash and Abrahamson their proportion of the purchase price.    In December, 1889, Hourn mortgaged the creamery at Rushford to other creditors to secure payment of firm debts to them severally.

On January 17, 1890, Hourn made an assignment of his non-exempt property and of the partnership property to the plaintiff, Swen L. Thompson, in trust for creditors, under Laws 1881, ch. 148, as amended.    The property which Hourn assigned was valued at $2,621.09.    Debts were proved and allowed to the amount of $7,531.    The assignee commenced suit against Pederson to recover the dray property, but was defeated and judgment was entered for defendant therein.    He also brought this action March 29, 1890, against Hourn and the purchasers of the creamery at Houston, to recover that property, or its value, and for the use of it meantime, claiming that the sale to them was made with a view of giving his creditors, Johnson, Nash and Abrahamson a preference over his other creditors, and that the defendants, Onstad, Olander and Lilly knew of and aided in procuring such preference.

The issues were tried November 16, 1891, before *Hon. John Q. Farmer,. J.*    Defendants offered in evidence the judgment roll in the case against Pederson, but it was excluded and they excepted.    The Judge made and filed findings on December 28, 1892, and directed judgment for plaintiff that he recover the property and $20 per month for the use of it from December 7, 1889, until restored, and in case the property has sustained waste or damage, such additional sum as will make the same good.    In case it is not, or cannot be, returned that he recover of defendants $2,500, its value when they

took it with interest from that time with costs.    Judge Farmer's term of office expired and a motion was made before his successor by defendants for a new trial.    The motion was denied and they appeal.    The discussion here was mainly on the evidence, whether it justified the finding that the purchasers had reasonable ground to believe that Hourn was insolvent and purchased with intent to give a preference to Johnson, Nash and Abrahamson.

*W. H. Harries, S. B. McIntire, G. W. Rockwell,* and *Wells & Hopp,* for appellants.

*H. S. Bassett,* for respondent.

GILFILLAN, C. J.    There can be little doubt that at the time of the alleged preference the concern of Hostvet & Hourn, conducted by Hourn as surviving partner, was, and for some time had been, a losing and failing concern, and had reached that stage when it did not and could not pay its debts as they matured in the usual course of business.    Where such is the case, it is a matter of no consequence that in the opinion of the debtor or of any one else he is not insolvent.    A witness' testimony that a debtor is solvent is of very little weight without knowing what he regards as insolvency. And the evidence would justify a finding that all the property the concern had, and all Hourn had, taken at its full value, was insufficient to pay its and his debts.    The finding that he and the concern were insolvent was therefore justified by the evidence.

The finding as to insolvency, and the judgment in the case of this plaintiff against Pederson, were not only not *res adjudicata,* but they were not even evidence on the point, not being between the same parties.

There can be no doubt either that Hourn knew the pecuniary condition of himself and the concern, so that when he paid in part, at any rate, one creditor, by a transfer of property of the concern, knowing he could not pay all the debts as they matured, he knew he was giving a preference to that creditor, and he must be presumed to have intended it.    *Hastings Malting Co.* v. *Heller,* 47 Minn. 71, (49 N. W. 400.)

The court found that the defendants Johnson, Abrahamson, Onstad, Nash, Olander, and Lilly, to whom Hourn transferred the property, received the transfer as copartners, and have ever since

owned and held it, and now hold and own it, as such; and that in the negotiation for the purchase Johnson was and acted as the agent for the others.

On the question whether Johnson's knowledge of the facts was attributable to the others it is immaterial whether, in negotiating for the transfer, he was acting as a partner or was only agent for the others, there being no partnership.

But the evidence clearly shows a partnership. The six agreed that each should contribute a specified sum, and that they would purchase the plant and business and carry on the business. The purchase was as much a part of the enterprise they agreed to undertake as the carrying on the business after the purchase, and it was consequently a partnership transaction.

And, aside from that mode of bringing notice to the defendants, the evidence justified the further (twelfth) finding of fact that at the time of the transfer each of the defendants had reasonable cause to believe the debtor to be, individually and as surviving partner, insolvent. The evidence in that line was probably as scant in regard to Lilly as to any other of the defendants. It appears that a few days before the transfer to defendants an effort was made to form an association of farmers to purchase the property and business, and that two or three meetings were held for the purpose, at one of which, at any rate, Lilly was present, and was appointed one of a committee to appraise the value of the plant and business; and at that meeting, Anderson, the administrator of Hostvet, the deceased partner of Hourn, made a statement to the effect that the concern was in shape that they wanted to sell, and to have formed for the purpose a stock company of farmers to buy, and by doing so they would be "straightened up" if each man they owed took shares to the amount they owed him, from which the natural inference was that they could settle with their creditors only by selling to them their property and business for the amount they owed. Such a proposition is so unusual, so out of the ordinary course of business, as to put one to whom it is made on inquiry as to the financial condition of the person making it. And what, in such case, will put an ordinarily prudent man on inquiry will, unless he make such inquiry, charge him with notice of the facts that proper inquiry would have disclosed. *Daniels* v. *Bank of Zum-*

*brota,* 35 Minn. 351, (29 N. W. 165;) *Holcombe* v. *Ehrmanntraut,* 46 Minn. 397, (49 N. W. 191;) *Dow* v. *Sutphin,* 47 Minn. 479, (50 N. W. 604.)

The finding of fact that the concern owed Johnson $2,100 is also excepted to as not sustained by the evidence. The books showed that the concern owed him more than .that, and the explanation of the books offered by defendant, and contradicted by plaintiff, that some credits to Johnson represented not what was owing to him, but what was owing to somebody else, was not so satisfactory that the court was bound to accept it. Stating the matter most favorably for defendants, there was a conflict in the evidence, and the decision of the court below upon it is final.

The court found as a fact that the transfer was made with a view to give a preference to Johnson, Abrahamson, and Nash, each of whom was a creditor of the insolvent debtor; and also that it was made and received with the intent on the part of the vendor and vendees, respectively, of evading the provisions of the insolvency laws.

As to the three defendants above named, the transfer was, of course, void; and it would not have aided the transfer had either of them, in order to effect the preference, paid in money any part of the price agreed on for the transfer. It could not be, as to any one of them, partly void and partly valid. It may be that, had any one of the defendants paid to the debtor money for his part of the price, without knowing that a preference was to be effected by the transfer, his interest in the property would be protected; but there can be little doubt on the evidence, even aside from the relation of partners between the transferees, that each of them knew one purpose of the transfer was to make a preference, so that no one of them could claim to be a *bona fide* purchaser, and to be protected. No one of them knowing that the purpose was unlawful, and paying money to accomplish it, for the benefit of those preferred, would stand in any better position than would the preferred creditor who paid part of the price in money in order to gain a preference.

The transfer was therefore void as to all the defendants to whom it was made. When ascertained and adjudged to be void, it was void as of the date it was made; and the defendants were, therefore, chargeable with the value of the use of the property, and also

for any damage or waste done to the property while in their possession.

The direction for judgment contemplates, however, the allowance of such value of the use and of the damages or waste only in case the property is restored to the assignee. If it cannot be, then the value, with interest from the date of the transfer, is to be recovered. The direction is proper. It is true the amount of damages, if any, is not ascertained so that it can be, at first, inserted in the judgment. But if, when the property shall be restored, it shall appear to have been damaged, the court may ascertain the amount thereof, and modify the judgment accordingly.

Order affirmed.

(Opinion published 57 N. W. Rep. 223.)