JOSEPH SCHLITZ BREWING COMPANY v. CLARENCE H. CHILDS, Assignee.[3]

July 7, 1896.

Nos. 10,020—(215).

**Chattel Mortgage—Partial Invalidity as Preference—Validity as to Balance.**

On April 2, 1895, W., being insolvent to the knowledge of S., executed to him his two promissory notes, the consideration of which was a past-due indebtedness of $888.83 and a then present loan of $300, made by S. to W., and secured the whole amount by a chattel mortgage. This loan was not made for the purpose of inducing W. to secure the past indebtedness, but to enable him to continue his business with the expectation that he might thereby pay his debts; and S. was not guilty of any fraud in fact in taking security for his debt, but the same was void as a preference under the in-

---

[2] Const. art. 4, § 33.          [3] Reported in 68 N. W. 65.

solvency laws of this state. W. made an assignment under such laws for the benefit of his creditors to the defendant, May 15, 1895, who took possession of the property described in the chattel mortgage. *Held* that, while the mortgage was void as a preference as against the assignee, so far as it secured the past indebtedness, it was valid as a security for the loan, and that the plaintiff is entitled to maintain this action to recover possession of the property covered by the mortgage.

Appeal by plaintiff from an order of the district court for Hennepin county, Russell, J., denying a motion for a new trial. Reversed.

*A. D. Smith* and *Rea, Hubachek & Healy*, for appellant.

*James D. Shearer*, for respondent.

BUCK, J. On March 30, 1895, one John M. Wark was engaged in the retail saloon business in the city of Minneapolis, and was then indebted to this plaintiff in the sum of $888.83 for money loaned on two separate occasions in the year 1894, and which was past due and unsecured. He had been a customer of plaintiff for several years, with a good reputation, and reliable in business matters. He held a license to sell liquor, granted by the city of Minneapolis, which would expire the next day, and had no money with which to purchase a new license. The plaintiff knew of an unexpired license which then had three months to run, and informed Wark of it, who requested plaintiff to loan him $300 with which to purchase the unexpired license, Wark then stating to plaintiff that if he could get the license he would, by the time it expired, be able to purchase a new license for a year, and continue his business, as it was increasing, and he expected to get some money from the West. Wark was owing at this time somewhere from $2,651 to $5,600, the exact amount not definitely appearing. His estate was worth $3,500. Only one creditor was pressing him for payment, and he was willing to give him time. Of this claim plaintiff knew, except he had no knowledge of the amount. Plaintiff never pressed Wark for payment, and told him to pay when convenient, which he did weekly, and plaintiff believed him to be solvent. Plaintiff asked Wark for his financial condition, and Wark told him that he owed about $2,000, and that his assets were about $4,000, which statement plaintiff testified he believed to be Wark's true financial condition.

At this time—March 30, 1895—they went to the office of plaintiff's attorney to have a chattel mortgage executed for the past indebted-

ness, and also to include the $300 which plaintiff was to loan Wark to purchase the unexpired license, but Wark, expecting his brother from Montana, concluded to wait until the next day, when he thought he could get the money from him without security.   Not succeeding in this, Wark, on April 2, 1895, executed to the plaintiff a chattel mortgage for $1,188.83, which included the past indebtedness and the $300 then loaned by plaintiff to Wark, who immediately used it in purchasing the unexpired license, all of which was done to enable Wark to continue in his business.

On May 15, 1895, Wark made a general assignment by deed in writing of all his unexempt property for the benefit of his creditors under the insolvent laws of this state.   This assignment was made by reason of certain actions commenced against him by several of his creditors, and this defendant is the assignee under such insolvency proceedings.   This chattel mortgage covers the property in question for which the plaintiff brought this action in replevin, and upon trial without jury the court below found in favor of the defendant.

It is contended by the appellant that at the time of giving the mortgage plaintiff had not reasonable cause to believe that Wark was insolvent.   But the trial court found otherwise upon this point, and we cannot say that the evidence is so manifestly and palpably against this finding as to disturb it.   It must, therefore, be held that plaintiff received the chattel mortgage as a preference as to the $888.83, but as to the $300 the mortgage stands upon an entirely different ground.   The mortgage for this sum was not given by Wark or taken by plaintiff as a preference, or to induce Wark to secure the past indebtedness.   The evidence upon this point is uncontradicted.

The money was loaned Wark to enable him to continue his business.   This did not constitute a fraud upon his creditors.   It did not injure their rights or damage their interests.   It took nothing from the debtor's funds, but added to them, to enable him to go on with the same kind of business in which he then was and had been engaged. For this purpose he used the $300 immediately.   In this proceeding there was not, and could not well be, any preferential taint.   The $300 was a fund by itself, used for the benefit of all parties, and, while secured by the same mortgage, the amount is severable from the $888.83, and thereby in no manner lessens the plaintiff's right of

recovery thereon, no more so than if the plaintiff's mortgage was simply $300, and it had brought replevin to recover for property mortgaged to secure that amount.    It is immaterial that one mortgage or instrument secured another debt besides the $300.    The exact amount appears from the evidence, and there was no need of computation to definitely ascertain the precise sum.    Had there been two mortgages, one for the $300 and another for the remaining past indebtedness, there could have been no serious controversy about it; and upon principle we think that there is no difference.    No technical rule should be applied in such case to defeat that which appears to have been an honest transaction between the parties.

In Baumann v. Cunningham, 48 Minn. 292, 51 N. W. 611, it was held that, in order to avoid a conveyance whereby it is alleged that one creditor has obtained the fraudulent preference mentioned in Laws 1881, c. 148, § 4,[2] it is necessary that not only shall insolvency of the debtor exist, and the creditor shall have reasonable cause to believe it so to exist, but, in addition, that the conveyance shall have been made with a view of giving a preference.    In that case the debtor, while insolvent, executed notes and mortgages, with a view of being able thereby to continue his business, and the mortgagee had knowledge in a technical sense that the debtor was insolvent, but upon the facts and finding of the trial court this court held as we have above quoted.    The finding of the trial court in that case, however, upon the facts was in favor of the validity of the notes and mortgage.

We sustain the trial court in this case as to the invalidity of the mortgage so far as it secures the payment of the past indebtedness of $888.83, but hold that the mortgage is valid as to the $300 thereby secured, and for that amount, with accrued interest, the plaintiff has a lien on the property, and a right to maintain this action.

The order denying plaintiff's motion for a new trial is reversed, the cause remanded, and the trial court directed to proceed therein not inconsistently with this opinion.

CANTY, J.    I concur in the result.    Although plaintiff knew that Wark was insolvent when it took the chattel mortgage from him, it did not enter into any deliberate scheme to evade the provisions of the insolvency law prohibiting preferences, as seems to have been the

---

[2] See G. S. 1894, § 4243.

case in Thompson v. Johnson, 55 Minn. 515, 57 N. W. 223, where the creditors of the insolvent debtor took the property of the insolvent for the debts due them, but paid some cash for the very purpose of taking the transaction out of the statute. As the statute does not apply to a cash transaction, and the cash consideration could not be separated from the consideration furnished by the previously existing indebtedness and the property apportioned accordingly, the parties seemed to have conceived this scheme as a way to beat the statute. But in the present case the parties did not enter into any such scheme. The creditor did not act in positive bad faith. The cash part of the transaction can be separated from the part of the transaction giving a preference to the prior existing indebtedness, and as to the latter the transaction should be set aside. But for the cash advanced plaintiff is entitled to retain its mortgage on all the mortgaged property. In my opinion, the case of Baumann v. Cunningham has little or no bearing on this case.